***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Ledford with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. The parties are subject to the North Carolina Worker's Compensation Act.
2. An employee/employer relationship existed between the named employee and named employer at all relevant times.
3. The employer is insured with Travelers Insurance Company as the workers compensation carrier.
4. Plaintiff alleges he sustained an injury by accident or specific traumatic incident arising out of and in the course of his employment with defendant-employer occurring on September 22, 2005, which caused injury to his back.
5. Plaintiff's average weekly wage is to be determined by the Commission and a Form 22 will be submitted.
6. Various medical records and other documents have been stipulated into evidence with the Pre-Hearing Agreement.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 44 years old at the time of the evidentiary hearing, with a date of birth of March 16, 1963. He is a high school graduate. He has worked since 2000 for defendant-employer, Highsmith Enterprises, Inc. d/b/a Royal Services, a janitorial and general services company. Plaintiff performed a wide variety of tasks, including landscaping, carpet cleaning, pressure washing, cleaning and waxing tile floors, cleaning marble, and taking care of vehicles. *Page 3 
2. Plaintiff has also done some limited work for another company owned by Tom Highsmith, Benchmark, which primarily provided commercial trash removal services. Plaintiff did not perform work for Benchmark within the 52 weeks prior to the alleged date of injury.
3. When plaintiff completed his Form 18 on November 14, 2005, he indicated a date of injury as September 23, 2005. However, at the evidentiary hearing, plaintiff alleged that he sustained injury to his back on or about September 22, 2005, and that he was mistaken on the Form 18. He alleges he had problems with the clutch on a tractor he was driving while mowing or bush hogging a grassy area on the premises of KOS Specialties, a customer of defendant-employer's. Plaintiff testified that, while using the clutch and brake on this tractor, something "snapped" and he felt pain in his right leg and shooting up to his lower back. Plaintiff had that day loaded up the trailer with defendant-employer's mowing equipment, but KOS Specialties supplied the tractor or bush hog he was using.
4. Plaintiff described the area where he was mowing as a very rough and rocky area with limited grass. He identified the work area on a map, which had been created by KOS Specialties to advise defendant-employer as to a schedule for cutting the grass in specific areas. Defendant-employer has had a contract in place to maintain this property for nine years. Contrary to plaintiff's testimony, per the testimony of Tom Highsmith, owner of defendant-employer, the area indicated by plaintiff is a natural area with trees and not a very rough, rocky area.
5. While plaintiff contends that he notified both his live-in girlfriend, Debra Farley, and Mr. Highsmith about this alleged injury on the afternoon of the date it occurred, Mr. Highsmith was not notified by plaintiff that he hurt his back or leg at work. Mr. Highsmith did not learn of the alleged injury until November, when plaintiff's counsel filed a Form 18. *Page 4 
6. Plaintiff testified that he left work on September 22, 2005 at 2:45 p.m. and immediately notified Mr. Highsmith of the incident. However, plaintiff's time records reflect that he kept working until 7:00 p.m. on the alleged date of injury. Plaintiff's time records also reflect that plaintiff worked a full day on the following day, as well as on the Sunday of that same weekend, performing carpet cleaning.
7. Prior to the alleged date of injury, for at least two months, plaintiff had consistently complained of right leg pain to Mr. Highsmith. This timeframe of the origin of plaintiff's back complaints is consistent with plaintiff's report to the first two doctors that treated plaintiff after the alleged date of injury.
8. Plaintiff alleged that Jeremy Martin, who was working with him on this date, was aware of the injury. Mr. Martin testified after the evidentiary hearing, in a deposition taken over defendants' objection, that he saw plaintiff operating the bush hog in the morning and then later in the evening and later plaintiff told him that his back was hurting and that he was in pain.
9. The first medical treatment plaintiff sought following the alleged September 22, 2005 injury was on September 27, 2005, when he went to the emergency room at Thomasville Medical Center. Dr. Clifton A. Baker, who has been practicing for 20 years, and specializes in emergency medicine, examined plaintiff at approximately 8:00 a.m.
10. Plaintiff told both Dr. Baker and the triage nurse that he had experienced the gradual onset of back pain over the prior two and one-half months — not that he hurt his back at work a few days beforehand. This is consistent with the complaints he made to Mr. Highsmith during July and August 2005. This is confirmed by the testimony of Dr. Baker, as well as plaintiff's hospital records, which reflect that plaintiff told Dr. Baker, as well as two emergency room nurses, including the triage nurse, exactly the same story, that he had experienced the *Page 5 
gradual onset of pain over time. Dr. Baker testified that plaintiff had never described anything remotely resembling the story he told at the hearing in terms of the origin of his back pain a few days earlier. Dr. Baker recorded his assessment in the computer while he was still with plaintiff and was firm in his testimony that he would have recorded any discrepancies if plaintiff had given him a different version of the onset of his pain.
11. Dr. Baker performed an examination which showed a normal back with no tenderness and he diagnosed plaintiff with right-sided sciatica, which is pain in the area of the sciatic nerve which comes down from the back and runs down the back of the leg.
12. On October 25, 2005, plaintiff saw Dr. Brian Blue for the first time on referral from the emergency room. Prior to this initial appointment, Dr. Blue's office sent plaintiff a questionnaire. Plaintiff wrote on the questionnaire that he had back pain that had been present for 4 months, then struck out the 4 and wrote in 2 months. Either timeframe is consistent with the gradual onset of back pain, but not a recent workplace injury as described by plaintiff at the evidentiary hearing.
13. Consistent with his report to the emergency room and Dr. Baker, plaintiff reported to Dr. Blue that he had experienced "an increasing history of intermittent sharp low back pain for several months." Plaintiff reported that his back pain improved with rest and was made worse with activities. He complained of right lower extremity pain but denied any numbness or weakness. Plaintiff specifically denied any previous low back injuries or trauma. Further, plaintiff specifically denied to Dr. Blue that he hurt his back in any sort of prior injury or trauma. Plaintiff had two office visits with Dr. Blue and never told Dr. Blue anything about his back pain being related to an incident using a tractor or bush hog at work. *Page 6 
14. After an MRI, Dr. Blue diagnosed plaintiff with a recurrent herniated disc at L4-5 and recommended plaintiff see his previous neurosurgeon. Dr. Randy Kritzer had previously treated plaintiff for back problems. Dr. Kritzer performed surgery on August 27, 1999 for a ruptured disc at L4-5. Dr. Kritzer did not assess a permanent partial impairment rating at that time since it was not a workers' compensation case, but testified that he would assign a permanent partial impairment rating of about twelve percent.
15. Plaintiff went to see Dr. Kritzer in November 2005, with complaints that he had injured his back driving a tractor. This was the first time plaintiff mentioned any alleged work incident to a treating medical provider and it was inconsistent with plaintiff's prior reports of a gradual and increasing onset of pain over two and one-half months. Plaintiff ultimately underwent a microdiskectomy at the L4-5 level and on June 21, 2006, Dr. Kritzer released plaintiff from his care, assigning an additional 8% permanent partial impairment rating to plaintiff's back and restricting plaintiff from lifting over 25 pounds on a frequent basis and changing positions every 30 minutes.
16. After having the opportunity to review the medical records from Dr. Baker at the emergency room and Dr. Blue at Triad Orthopedics, Dr. Kritzer agreed that plaintiff had told him a very different version of events from what he had told Dr. Baker and Dr. Blue and acknowledged that both versions of events could not be true. Dr. Kritzer was very clear that plaintiff never told him anything about any sort of gradual onset of pain during his office visits but rather claimed a sudden onset of pain at a specific place in time while working for defendant-employer on or about September 23, 2005. Based upon the version of events plaintiff described to Dr. Kritzer, he opined that the incident on September 22 or 23, 2005 caused the recurrent disc herniation in plaintiff's back. Dr. Kritzer stated, "if I knew for a fact that there was not this *Page 7 
episode on the lawn mower and that there had been this ongoing gradual story, then I would not find causation between the two events."
17. Based upon the greater weight of the competent, credible evidence, plaintiff's allegations of a specific traumatic incident occurring on or about September 22 or 23, 2005 are rejected as not credible. Plaintiff's testimony is inconsistent with what he reported to the medical providers from whom he first sought treatment, specifically, that he suffered a gradual onset of pain. The gradual onset of pain is also supported by Mr. Highsmith's testimony that plaintiff had complained of leg pain since July 2005, which is found to be credible testimony.
18. As plaintiff's testimony as to the occurrence of an incident on September 22 or 23, 2005 is not credible, Dr. Kritzer's opinion regarding the cause of plaintiff's herniated disc is given less weight.
19. By the greater weight of the competent, credible evidence of record and reasonable inferences therefrom, the undersigned find that plaintiff did not sustain an injury by accident or specific traumatic incident to his back on or about September 22 2005.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. In order for an injury to be compensable under the Workers' Compensation Act, it must be the result of an accident or specific traumatic incident arising out of an in the course of employment. N.C. Gen. Stat. § 97-2(6). The person claiming the benefit of compensation has the burden of showing that the injury complained of resulted from an injury by accident arising out of and in the course of employment.Henry v. Leather Co., 231 N.C. 477, 57 S.E.2d 760 *Page 8 
(1950). In this case, plaintiff has failed to meet his burden of proof to show, by the greater weight of the credible and competent evidence, that he sustained a back injury as the result of a an injury by accident or a specific traumatic incident on or about September 22, 2005 or September 23, 2005 and his claim must be denied. Id., N.C. Gen. Stat. § 97-2(6).
2. The claim being denied, no attorney's fees will be awarded to plaintiff's current counsel of record or plaintiff's prior counsel, whose Motion to Withdraw was allowed by Deputy Commissioner Ledford. Outstanding costs that have been requested by plaintiff's former counsel are a matter to be resolved between plaintiff and plaintiff's former counsel N.C. Stat. § 97-90.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim must be and is hereby DENIED.
2. As ordered by Deputy Commissioner Ledford, plaintiff's counsel of record, Crumley Associates, is allowed to withdraw as counsel of record and is relieved of any further obligation to plaintiff in this matter.
3. Each side shall pay their own costs, except that defendants shall pay the following expert witness fees, if not already paid: $510 to Dr. Clifton Ayers Baker, $600 to Dr. Brian Blue, and $600 to Dr. Randy O. Kritzer.
 This the 9th day of April, 2008. *Page 9 
S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
DISSENTING WITHOUT A WRITTEN OPINION:
 S/___________________ DANNY LEE McDONALD COMMISSIONER *Page 1